**GENERAL MOTORS CORPORATION,**
Plaintiff,

v.

**Bobbie KIRBY, Defendant.**

**Dennis Hazen HUGULEY,**
et al., Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,**
Defendant.

Nos. 94-CV-72616-DT, 83-CV-72864-DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 25, 1994.

Patrick M. Kirby, Flint, MI, for Kirby.

Timothy K. McConaghy, Alex L. Alexopoulos, Hardy, Lewis, Pollard and Page, P.C., Birmingham, MI, for General Motors.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff Bobbie Kirby is a black female former salaried employee of General Motors Corporation ("GM") who was fired from her job at GM on February 24, 1992. She filed suit in Genesee County Circuit Court on November 2, 1992, alleging that GM fired her because of her race and sex, in violation of Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp.Laws. §§ 37.2101–.2804. GM asks me to enjoin Kirby's race discrimination claim, arguing that the claim is barred by the Consent Decree ("the Decree") I approved in *Huguley v. General Motors Corp.,* 128 F.R.D. 81 (E.D.Mich.1989); *aff'd,* 925 F.2d 1464 (6th Cir.), *cert. denied,* —— U.S. ——,

112 S.Ct. 304, 116 L.Ed.2d 247 (1991). GM's motion is denied.

■ I have been asked to describe the scope and preclusive effect of the *Huguley* Consent Decree on numerous occasions. *See Huguley v. General Motors Corp.,* 857 F.Supp. 555 (E.D.Mich.1994) (*"Allison"*); *Huguley v. General Motors Corp.,* 842 F.Supp. 941 (E.D.Mich.1993) (*"Dunn"*); *Huguley v. General Motors Corp.,* No. 83–CV–72864–DT, 1993 WL 276790, 199 U.S.Dist: LEXIS 4134 (E.D.Mich. Jan 21, 1993) (*"Perry"*), *aff'd,* 999 F.2d 142 (6th Cir.1993); *Thomas v. General Motors Corp.,* No. 91–CV–76068–DT, 1992 WL 521527, 1992 U.S.Dist. LEXIS 22019 (E.D.Mich. Jan. 31, 1992). It is well established by now that the Decree prevents any claim "alleg[ing] race discrimination in the promotion, pay, demotion, transfer, layoff, recall or other personnel decisions" by a covered GM employee arising from conduct "occurring prior to the date of this Decree and any future effect of such prior occurrences." Consent Decree at 11–12; *see Perry,* 999 F.2d at 147. The Decree also bars claims which have the practical effect of defeating the Decree's five-year, group-wide, affirmative action computer-monitoring system. *See Dunn,* 842 F.Supp. at 944.

The Decree became effective on October 15, 1991 when the U.S. Supreme Court denied a petition for a writ of certiorari. *See Perry,* 999 F.2d at 148 n. 4. GM recognizes that the effective date of the Degree is almost four months *before* Kirby was terminated. Invoking *Perry* and *Thomas,* it nevertheless asks that I enjoin the state court action, claiming that Kirby's firing was a future effect of alleged past discrimination which accordingly comes under the reach of the Decree.

GM explains that Kirby's 1992 termination has its roots in August 1990, when she was demoted from her supervisory post. Kirby alleged during her deposition that the August 1990 demotion was discriminatorily motivated. GM then terminated a number of employees in 1992 as part of a reduction in force. Kirby did not survive the reduction in force, however, because the only position available to her would have been as a super-visor, a position for which she was ineligible because of her earlier demotion. Thus, GM maintains, Kirby's termination was directly caused by events that occurred during a time period covered by the Decree; the discrimination, if any, occurred before October 31, 1991.

I would have no trouble agreeing with GM and enjoining Kirby's state law case if her only claim was that her termination resulted from her 1990 demotion. This case is distinguishable from *Perry* and *Thomas,* however, because Kirby allegedly has support for her claim that her 1992 termination is a separate, post-Decree, act of discrimination. Kirby claims to have a tape recording which shows the racial bias of the plant manager who participated in the decision to fire her. She argues that such a tape recording could show the manager's predisposition to discriminate on racial grounds and that these allegations, if proven, would take her claim out of the Decree's umbrella. I agree.

GM maintained during oral argument that the tape-recorded statements by Kirby's plant manager could not be used to establish Kirby's post-Decree claim because the recording was made before October 31, 1991. This argument misunderstands both the scope of the Decree and the role this evidence plays in Kirby's claim. The Decree covers only discrimination in promotion, transfers, and discretionary pay increases because of race; it does not, however, immunize GM against all the consequences of derogatory statements or racial epithets. *Cf. Thomas,* 1992 WL 521527, at * 1, 1992 U.S.Dist. LEXIS 22019, at * 2 (holding that claims of racial harassment are not precluded by the Decree). It is not claimed here that the allegedly racist tape-recorded statements themselves are separate acts of discrimination. Instead, Kirby merely claims that the statements are evidence of the mind-set of the GM manager who chose to fire her *at a later date.* Nothing in the Decree prevents Kirby from using this evidence to prove that her 1992 termination was racially motivated.

■ Nor do I find that Kirby's deposition testimony precludes her from arguing that her termination is a separate act of discrimi-

nation. I realize that under Michigan law, "when a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or a showing of mistake or improvidence." *Gamet v. Jenks,* 38 Mich. App. 719, 726, 197 N.W.2d 160 (1972) (quoting *Southern Rendering Co, v. Standard Rendering Co.,* 112 F.Supp. 103, 108 (E.D.Ark.1953)). Still, it is not at all clear that the state trial court will hold Kirby to her deposition statements: under Michigan law, "[d]eposition testimony damaging to a party's case will not always" bind a party during litigation. *Id.*

Finally, GM argues that Kirby's state law claim should be enjoined because of her claim that she was terminated in part because of the role she played during the *Huguley* litigation (she was a witness for the class and opposed the Decree). I do not know whether such a state law claim exists. Regardless, nothing in the Decree's non-retaliation clause requires me to enjoin the state law retaliation claim she might have (if any).

That I refuse to enjoin Kirby's state law race discrimination claim at this time does not preclude GM from raising this motion again at some later date. I can issue an injunction at a later time if Kirby fails during her state court trial to prove that her termination was a separate, post-Decree act of discrimination.

Because I find that an injunction is inappropriate here, I need not address Kirby's claim that the equitable doctrines of laches or judicial estoppel bar GM's motion.

For the foregoing reasons, GM's motion to enjoin Kirby's state court race discrimination case IS HEREBY DENIED.