# STATE OF MICHIGAN

# COURT OF APPEALS

MELISSA CALVERT,

        Plaintiff-Appellee,

v

JOHN GLEASON,

        Defendant-Appellant.

and

GENESEE COUNTY,

        Defendant.

UNPUBLISHED
September 22, 2015

No. 320847; 321024
Genesee Circuit Court
LC No. 13-100248-CD

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

Defendant appeals the trial court's denial of his motion for summary disposition. For the reasons stated below, we reverse and remand for entry of an order that grants summary disposition to defendant.

## I. FACTS

Defendant John Gleason served as a state senator, and employed plaintiff Melissa Calvert, a white woman, as his secretary in his Lansing office. Facing term limits, Gleason decided to run for Genesee County Clerk, and gave Calvert good reason to believe that she would receive a secretary's position in the County Clerk's Office, if he won election.

In November 2012, the voters elected Gleason as Genesee County Clerk. Soon thereafter, he resigned from the Michigan Senate and dismissed his staff, including Calvert. In December and January 2012, as Gleason transitioned to his new position, he continued to give Calvert reason to believe she would have a job in his new office. Gleason, who believed that he had funding to hire multiple employees, also opined, to most anyone who would listen, that he desired to affirm his commitment to "diversity" by hiring minorities, veterans, and the physically disabled.

Once the cold reality became clear that, due to budget problems, Gleason would only be allowed funding for a single staff member, he hired a white female to be his secretary—but not

-1-

Calvert. Understandably disappointed, Calvert sued Gleason and the county, and alleged that both parties: (1) discriminated against her based on her race and gender, in violation of the Elliot Larsen Civil Rights Act (ELCRA), MCL 37.2701, *et seq*; (2) discriminated against her based on the disability status of another job applicant, contrary to the mandates of the Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*; (3) breached a contract to employ her; and (4) should be estopped from not fulfilling their promise to give her a job under the doctrine of promissory estoppel.

Both Gleason and the county moved for summary disposition pursuant to MCR 2.116(C)(10). After it held a hearing on the motions, the trial court unsurprisingly ruled that Calvert could not bring suit against either Gleason or the county under the Persons with Disabilities Act, because she was not disabled. It allowed her remaining allegations against Gleason as an individual—(1) race and sex discrimination under the ELCRA, (2) breach of contract, and (3) promissory estoppel—to proceed to trial. The court dismissed Calvert's suit against the county in its entirety.

On appeal, Gleason says that the trial court erred when it denied his motion for summary disposition. Calvert asks us to uphold the ruling of the trial court with regard to her claims against Gleason. She failed to appeal the trial court's dismissal of: (1) her claims against the county; or (2) her claim against Gleason under the Persons with Disabilities Act.

Accordingly, we must address whether the trial court correctly denied Gleason's motion for summary disposition, as to Calvert's claims for: (1) breach of contract; (2) promissory estoppel; and (3) race and sex discrimination in violation of the ELCRA.

## II. ANALYSIS[1]

Though we appreciate why Calvert would be disappointed by Gleason's hiring decision, we must apply the law, which requires that her case be dismissed.

The reason for our ruling is found in both black-letter contract and employment-discrimination law. Under the law of employment contracts, the county is the putative employer and contracting party—not Gleason, who merely functioned as the county's agent in making a

---

[1] A trial court's decision to grant or deny a motion for summary disposition is reviewed de novo. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 374; 689 NW2d 145 (2004). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006).

Likewise, matters of statutory interpretation, and the existence and interpretation of a contract are reviewed de novo on appeal. *Midamerican Energy Co v Dept of Treasury*, 308 Mich App 362, 369; 863 NW2d 387 (2014); *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

hiring decision.[2] Thus, any contract-based claim[3] must be lodged against the county, not its agent, Gleason. Because the trial court dismissed the county from the suit, and Calvert did not appeal this decision, any contract claims she may have had are now dismissed with prejudice.[4]

And, though Gleason may, in theory, be sued for employment discrimination under the ELCRA as an individual,[5] Calvert's race and gender discrimination claims against him lack

---

[2] An agent of a contracting party is not normally liable for the breach of his principal, unless the agent acts fraudulently or outside the scope of the authority delegated to him by his principal. *Hallett v Gordon*, 122 Mich 567, 572; 81 NW 556 (1900).

[3] Needless to say, breach of contract is a contract claim. And, as plaintiff's counsel asserted at oral argument before our Court, promissory estoppel sounds in contract as well. See *State Bank of Standish v Curry*, 442 Mich 76, 83-84; 500 NW2d 104 (1993).

[4] Were we nonetheless to permit Calvert to sue Gleason as an individual for breach of contract and promissory estoppel, her claims would still lack merit.

"Employment contracts can generally be described as unilateral contracts, a unilateral contract being one in which the promisor does not receive a promise in return as consideration. The employer makes an offer or promise which the employee accepts by performing the act upon which the promise is expressly or impliedly based." *Cunningham v 4-D Tool Co*, 182 Mich App 99, 106; 451 NW2d 514 (1989). Accordingly, a potential employee generally does not "accept" an unwritten offer of employment until he performs his side of the bargain—i.e., begins work. *Id*. Although Gleason offered Calvert employment, Calvert did not accept this offer through performance—i.e., starting work—because Gleason revoked his offer of employment before Calvert was able to do so. Further, had she actually started to perform the job, her employment would have been at will, and thus she could have been discharged without cause or reason at any time.

"The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Klein v HP Pelzer Automotive Sys, Inc*, 306 Mich App 67, 83; 854 NW2d 521 (2014).

Calvert has failed to show that she actually relied, to her detriment, on Gleason's promise of a job. *Id*. In an affidavit, she merely asserts that she "could have easily sought and obtained other employment with the State of Michigan and/or another lobbying firm," but did not because Gleason offered her a job. This conclusory statement does nothing to demonstrate that "the State of Michigan and/or another lobbying firm" actually had a job available for a person with her skill set between January 2 and February 11, 2013. Nor did Gleason induce Calvert to resign her position with the state—indeed, she was required to do so because Gleason could not seek reelection as state senator. And she provides no evidence that she turned down another job offer or incurred any financial hardship in reliance on Gleason's offer of a job at the county clerk's office.

merit. Because Calvert is a white female, and the county hired a white female, by definition, race and sex did not make a difference in the employer's ultimate hiring decision.[6] See *Matras v Amoco Oil Co*, 424 Mich 675, 682; 385 NW2d 586 (1986).

We reverse and remand with direction to enter an order of summary disposition for Gleason as to all claims. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola

---

[5] MCL 37.2201(a) defines "employer" as "a person who has 1 or more employees, and includes an agent of that person." "Person" is defined in MCL 37.2103(g) as "an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity." See also *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005).

[6] See *Sniecinski v BCBSM*, 469 Mich 124, 136; 666 NW2d 186 (2003) (holding that plaintiff must demonstrate that the prohibited discrimination had a causal relationship to the negative employment outcome he suffered).